UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

M.S., an individual, et al.,                    Case No. 6:15-cv-02069-AA

            Plaintiff,                          OPINION AND ORDER

    v.

KATE BROWN, in her capacity as
Governor of the State of Oregon, et al.,

            Defendants.

---

AIKEN, Judge:

    Plaintiffs filed suit purporting to challenge Oregon Ballot Measure 88, a referendum measure presented to and rejected by Oregon voters during the general election in November 2014. Plaintiffs contend that the rejection of Measure 88 violated their constitutional rights by arbitrarily denying them driving privileges based on their national origin, immigration status, and membership in a "disfavored minority group." Pls.' Compl. at 3. Plaintiffs seek class certification and declarations that Measure 88 "is void and unenforceable" and that defendants "are authorized and required to issue driver cards." Id. at 18.

    Defendants now move for dismissal of plaintiffs' claims. Defendants argue that the retroactive invalidation of Measure 88 is barred by sovereign immunity and principles of federalism and would not redress plaintiffs' alleged injury in any event. Defendants also argue

1    - OPINION AND ORDER

that plaintiffs fail to state a viable claim under 42 U.S.C. § 1983, and that no defendant was personally involved in the deprivation of a constitutional right. Defendants' motion is granted.

BACKGROUND

Since 2008, Oregon has required proof of lawful presence in the United States to obtain driving privileges in the state, consistent with the Federal REAL ID Act of 2005. *See* Or. S.B. 1080, § 2 (2008) (SB 1080); Or. Rev. Stat. §§ 807.021, 807.040; REAL ID Act of 2005, Pub. L. No. 109–13, § 202(c)(2)(B), 119 Stat. 231 (2005) (states must require verification of lawful status in the United States "before issuing a driver's license or identification card").

In 2013, the Oregon legislature passed and the Governor signed Senate Bill 833 (SB 833); it would have become effective on January 1, 2014. Pls.' Compl. at 12, 14. SB 833 would have allowed individuals who could not establish their lawful presence in the United States to obtain an alternative form of driving privileges through an Oregon Department of Transportation "driver card" program.[1] *Id.* at 12-13. Before SB 833 went into effect, however, Oregon citizens obtained sufficient signatures to refer SB 833 to a referendum vote.[2] The referendum on SB 833 then became Measure 88 and asked voters to approve or reject the legislation.

During the general election of 2014, a majority of Oregon voters voted "no" on Measure 88 and did not approve SB 833. Pls.' Compl. at 16. The State has continued to issue driving privileges as it had before SB 833; it has not issued "driver cards" pursuant to SB 833.

On November 4, 2015, plaintiffs filed suit challenging the rejection of Measure 88.

---

[1] Under SB 833, the "driver cards" would have included features distinguishing them from driver's licenses to comply with the REAL ID Act. Pls.' Compl. at 13.

[2] Oregonians for Immigration Reform, a sponsor of the referendum petition, moves to intervene as a defendant. I find that it fails to establish that the State cannot adequately represent its interests in defending this lawsuit, and I deny the motion. *Prete v. Bradbury*, 438 F.3d 949, 956-57 (9th Cir. 2006).

DISCUSSION

In this lawsuit, plaintiffs seek to invalidate Oregon voters' rejection of Measure 88.[3] Specifically, plaintiffs assert that the rejection of Measure 88 is not supported by a legitimate public interest, because those who voted against the measure acted with discriminatory animus towards undocumented immigrants. Plaintiffs contend that, in light of the improper motive underlying the rejection of Measure 88, the State defendants' recognition of the referendum vote and their failure to implement SB 833 violates plaintiffs' Fourteenth Amendment rights to equal protection and substantive due process. Plaintiffs seek a declaration that the rejection of Measure 88 violates their rights and is thus "void and unenforceable," and that the State defendants are "authorized and required to issue driver cards pursuant to SB 833." Pls.' Compl. at 18. Plaintiffs also seek an injunction to enforce the requested declaratory judgments. In other words, plaintiffs request that this Court order the State to implement and enforce SB 833 by issuing driver cards authorized by the legislation.

Initially, it is important to emphasize the limited nature of plaintiffs' claims. Plaintiffs do not challenge an existing law enacted or enforced by the State, such as SB 1080 or the requirement of lawful presence in Oregon to obtain a driver's license. Further, plaintiffs do not challenge the referendum process associated with Measure 88 or any State action taken with respect to the referendum election. Rather, plaintiffs challenge only the voters' rejection of Measure 88 – and, by extension, of SB 833 - and the State's alleged refusal to implement SB 833

---

[3] Throughout their Complaint and in their opposing brief, plaintiffs repeatedly assert that they challenge Measure 88, and that Measure 88's "enactment," enforcement, and implementation violates their rights. *See, e.g.,* Pls.' Compl. at 2-3, 8-9, 17-18; Pls.' Opp'n at 9, 12, 15. However, plaintiffs cannot challenge Measure 88 itself; Oregon voters voted "no" on the measure, and it was not enacted or implemented. If Measure 88 had passed, it would have authorized the driver cards they wish to obtain. Therefore, plaintiffs necessarily challenge the election process and the "no" vote by Oregon voters, not the substance of Measure 88.

as a result of the referendum. Thus, I agree with State defendants that plaintiffs essentially "ask this Court to invalidate the outcome of a public referendum, and to judicially enact a state law that the Oregon voters rejected." Defs.' Mem. in Supp. at 1. In light of the relief they seek, defendants argue, *inter alia,* that plaintiffs fail to meet the redressability element of standing, because judicial invalidation of the vote on Measure 88 would not result in the implementation of SB 833 and the issuance of driver cards. I agree.

"The 'irreducible constitutional minimum' of Article III standing consists of (1) 'injury in fact,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Novak v. United States,* 795 F.3d 1012, 1017-18 (9th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). To demonstrate redressability, the plaintiff must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000) (citation omitted). "'Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.'" *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 107 (1998)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Thus, plaintiffs must establish that a ruling in their favor – the invalidation of Measure 88's rejection by voters – will redress their alleged injury. They cannot do so.

Plaintiffs' alleged injury is the inability to obtain driving privileges under SB 833 due to Oregon voters' rejection of Measure 88. *See* Pls.' Compl. at 16-18. However, even if the Court found the rejection of Measure 88 to be unconstitutional, SB 833 would not become law and plaintiffs' injury could not be redressed by this Court.

Under the Oregon Constitution, Oregon voters retain the right of referendum to approve or reject legislation enacted by the Oregon legislature. Or. Const. art. IV, § 1(3)(a) ("The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed."). "When a referendum is invoked, the act of the legislature then becomes merely a measure to be voted on by the people, and, if the people vote in the affirmative, the measure becomes an act; if they vote in the negative, the measure fails." *Portland Pendleton Motor Transp. Co. v. Heltzel*, 197 Or. 644, 647, 255 P.2d 124 (1953) (en banc); *see also Davis v. Van Winkle*, 130 Or. 304, 307, 278 P. 91 (1929) ("In fact, the measure enacted by the Legislature, which is referred to the people, is not a law. It will never become a law unless a majority of voters voting upon the referred bill vote in favor of the bill.").[4] Here, a referendum on SB 833 was called, and Oregon voters rejected Measure 88. As a result, SB 833 never became law and would not become law even if this Court invalidated the voters' rejection of Measure 88.

In response, plaintiffs emphasize that SB 833 was "enacted" and "became law" after being passed by the Legislative Assembly and signed by the Governor, citing the language of the Oregon Constitution. Pls.' Opp'n at 5-7. Plaintiffs rely on constitutional text distinguishing

---

[4] Plaintiffs argue that *Heltzel* and *Davis* are inapposite because they were decided when the following language, since removed, was included in the Oregon Constitution: "any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise." *Former* Or. Const. art. IV, § 1. Now, the language reads: "An initiative or referendum measure become effective 30 days after the day on which [the initiative] is enacted or [the referendum is] approved by the majority of the votes cast thereon." Or. Const. art. VI § 1(4)(d). This change in language does not alter or diminish, in any way, the citizens' referendum power under the Oregon Constitution and the requisite voter approval of a referendum measure. *See generally* Or. Const. art. IV, § 1(1)-(5); *see also* Weston Decl. Ex. B at 2 (doc. 43) (explaining that changes to art. IV, § 1 simply "clean up" the language and do not "diminish the power of the people to initiate or refer measures").

"enactment" of an initiative measure from "approval" of a referendum measure, as well as language describing the "effective date" of a referendum measure, to argue that legislation referred to voters by a citizen petition is "enacted" when approved by the legislature. *See* Or. Const. art IV, § 1. To further their point, plaintiffs cite *American Energy, Inc. v. City of Sisters*, 250 Or. App. 243, 280 P.3d 985 (2012), where the Oregon Court of Appeals held that legislation approved by citizen referendum is "enacted when it is adopted by the governing body...and not when it is subsequently approved by the people." *Id.* at 251, 280 P.3d 985. Plaintiffs thus maintain that SB 833 was "enacted" and "became law" when approved by the legislature and the Governor, and it necessarily would become effective if this Court invalidates voters' rejection of Measure 88. Plaintiffs provide no persuasive legal authority for this novel proposition, and I find it unsupported by Oregon law. Regardless of whether SB 833 was "enacted" by the legislature, it never "became law."

The Oregon Constitution makes clear that "referendum measures shall be *submitted to the people* as provided in this section and by law not inconsistent therewith." Or. Const. art. IV, § 1(4)(b) (emphasis added). As noted by the Oregon Supreme Court, the right of referendum was "was created to benefit the majority of the people by *suspending operation of a statute until the people have an opportunity to approve or reject legislation.*" *Bernstein Bros. v. Dep't of Revenue*, 294 Or. 614, 619, 661 P.2d 537 (1983) (emphasis added); *see also Hoffman v. Pub. Employees Retirement Bd.*, 31 Or. App. 85, 94, 569 P.2d 701 (1977) ("Plaintiffs have confused the effect of a referendum, *which does suspend the effective date of an act*, and an initiative, which has no such effect.") (citing Or. Const. art. IV, §§ 1(4)(d), 28) (emphasis added). Regardless of whether legislation is "enacted" when passed by the legislature, if a referendum is properly called, the legislation is suspended and does not become effective until approved by

Oregon voters. *Bernstein Bros.*, 294 Or. at 619, 661 P.2d 537; *Heltzel*, 197 Or. at 647, 255 P.2d 124; *Davis*, 130 Or. at 307, 278 P. 91.

Here, even if the Oregon legislature "enacted" SB 833, Oregon citizens successfully petitioned to refer SB 833 to voters. Plaintiffs do not challenge the petition under which the referendum was ordered or otherwise argue that the referendum process was flawed or invalid. Thus, once the referendum was called, operation of SB 833 was suspended pending the outcome of Measure 88; it could become effective as Oregon law *only* if a majority of voters approved it by voting "yes" on Measure 88. *See* Or. Const. art. IV, § 1(4)(d) ("an initiative or referendum measure becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon"). It is undisputed that Oregon voters rejected Measure 88; thus, SB 833 never went into effect, and no law authorizes the State to grant driver cards. Invalidation of the Measure 88 vote would not change these salient facts.

Consequently, this Court cannot order the State to comply with legislation that could not and would not become effective, and no ruling would redress plaintiffs' alleged injury. *See Mayfield v. United States*, 599 F.3d 964, 972 (9th Cir. 2010) (finding no redressability where "the government will not be required to act in any way that will redress [the plaintiff's] past injuries" even if the challenged statutes "were declared unconstitutional"). Moreover, this Court has no authority to substitute the voter approval required by the Oregon Constitution and render SB 833 "effective" as valid Oregon law. Principles of federalism underlying the Tenth and Eleventh Amendments forbid this Court from directing the State to enact or enforce state laws. *E.g., Printz v. United States*, 521 U.S. 898, 919-20 (1997); *New York v. United States*, 505 U.S. 144, 10155-56, 61 (1992); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The cases relied on by plaintiffs are unavailing. Notably, *American Energy* addressed the issue of when an ordinance subsequently approved by referendum was enacted, not when it became effective. 250 Or. at 250-51, 280 P.3d 985 (distinguishing between the "effective date" and "enactment date" of the ordinance). The Oregon Court of Appeals in no way, shape, or form dispensed with the requirement of voter approval for a referendum measure to become law.

Plaintiffs also cite *Hunter v. Erickson*, 393 U.S. 385 (1969) and *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188 (2003) to support their argument. Both cases are distinguishable.

In *Hunter*, citizens of Akron, Ohio passed an ordinance essentially suspending an existing ordinance granting equal opportunity in housing to "all persons" "regardless of race, color, religion, ancestry or national origin." 393 U.S. at 386-87. The citizen ordinance forbade the city council from enforcing the existing ordinance or any future ordinance dealing with housing discrimination unless approved by a majority of voters. *Id.* at 387, 390. Noting that the citizen ordinance targeted only "laws to end housing discrimination based on 'race, color, religion, national origin or ancestry'" and placed a "special burden on racial minorities within the governmental process," the Court found that the ordinance "constitutes a real, substantial, and invidious denial of the equal protection of the laws." *Id.* at 390-91, 393. Here, unlike *Hunter*, Oregon voters did not pass a referendum measure that targeted or placed a special burden on a distinct class of people; voters did not pass a measure at all. Further, the rejection of Measure 88 did not suspend or repeal an existing law prohibiting discrimination based on race, ethnicity, or national origin, and it did not subject all future legislative acts dealing with immigration to the referendum process. Measure 88 was simply a citizen referendum seeking voter approval or rejection of SB 833, and voters rejected it.

8   - OPINION AND ORDER

*City of Cuyahoga Falls* likewise fails to further plaintiffs' claims. There, the City of Cuyahoga Falls submitted to voters a citizen referendum calling for the repeal of a housing ordinance authorizing construction of a specific low-income housing project. 538 U.S. at 192-93. Voters passed the referendum and repealed the ordinance, though the City suspended certification of the election results until resolution of pending litigation on the referendum. *Id.* Ultimately, the Ohio Supreme Court invalidated the referendum on grounds that only legislative acts - not administrative acts such as approving a site plan for a housing project - were subject to referendum. *Id.* at 193. In the meantime, plaintiffs filed suit in federal court alleging that City officials violated their equal protection rights by submitting the referendum petition to voters and refusing to issue building permits pending the election results. *Id.* Ultimately, the Supreme Court found that the plaintiffs failed to establish an equal protection violation, because in "placing the referendum on the ballot, the City did not enact the referendum and therefore cannot be said to have given effect to voters' allegedly discriminatory motives for supporting the petition." *Id.* at 195. Further, the Court described the City's refusal to issue building permits while the referendum was pending as a "nondiscretionary, ministerial act" required by the city charter. *Id.*

Plaintiffs cite *Cuyahoga Falls* for the proposition that it supports their challenge to the "substantive result" of Measure 88. To the contrary, the vote on Measure 88 had no "substantive result"; the measure did not pass. Just like the plaintiffs in *Cuyahoga Falls,* plaintiffs here do not challenge the referendum measure itself - nor, presumably, would they want to - because it never became effective to allow driver cards. *Cf. Cuyahoga Falls*, 538 U.S at 196-97 ("[S]tatements made by decisionmakers or referendum sponsors during deliberation over a referendum may constitute relevant evidence of discriminatory intent *in a challenge to an ultimately enacted initiative*....But respondents do not challenge an enacted referendum.") (emphasis added).

9    - OPINION AND ORDER

In fact, Oregon voters approved no law that restricts or burdens plaintiffs' rights, such as the referenda in *Hunter* and *Cuyahoga Falls*. Instead, Oregon voters rejected Measure 88 and its extension of driving privileges to undocumented individuals, and no law authorizing driver cards went into effect. As such, the State defendants are not refusing to issue driver cards because a referendum motivated by discriminatory animus *prevents* them from doing so; they cannot issue driver cards because no valid, existing Oregon law *authorizes* them to do so.[5]

Ultimately, even if the vote on Measure 88 was invalidated, SB 833 was never approved by Oregon voters and would remain ineffective. Moreover, this Court could not compel the State to issue driver cards, which is the relief plaintiffs ultimately seek. Accordingly, plaintiffs fail to establish the redressability requirement of standing.

CONCLUSION

Defendants' Motion to Dismiss (doc. 29) is GRANTED. Proposed intervenor-defendant's Motion to Intervene (doc. 27) is DENIED. All other pending motions are DENIED as moot, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 13th day of May, 2016.

_____
Ann Aiken
United States District Judge

---

[5] As a result, plaintiffs also fail to show that their injury is "fairly traceable" to the State defendants' alleged conduct to establish the causation element of standing. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).